United States Courts
Southern District of Texas
FILED

NOV 1 9 2004

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARATHON E.G. LPG LDC, § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION H-04-4438 |
| VS. § | |
| § | |
| TRUST COMPANY OF THE WEST § | |
| § | |
| § | |
| Defendant. § | |

## ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff Marathon E.G. LPG LDC ("Marathon"), files this Original Complaint for Declaratory Judgment, seeking a judicial determination that Defendant Trust Company of the West ("TCW") has no rights to the proceeds from sales of downstream products pursuant to a written overriding royalty agreement between Marathon and TCW. In addition, Marathon seeks recovery of overpayments made to TCW. In support of this relief, Marathon respectfully shows the Court the following:

### PARTIES

1. Plaintiff Marathon E.G. LPG LDC is a foreign corporation organized under the laws of the Cayman Islands. As such, Marathon is not a resident of Texas for purposes of determining diversity of citizenship.

2. Defendant Trust Company of the West is a foreign limited liability company organized under the laws of California and is authorized to do business in Texas and may be served with process by serving the Texas Secretary of State, as its agent for service at Office of the

Secretary of State Statutory Documents Section - Citations Unit at P.O. Box 12079, Austin, Texas 78711, because defendant engages in business in this state but does not maintain a regular place of business in this state or a designated agent for service of process, and this suit arose out of defendant's business in this state. FED. R. CIV. P. 4(e)(1).

## JURISDICTION AND VENUE

3. This Court has jurisdiction to grant the declaratory relief sought by Marathon pursuant to 28 U.S.C. § 1332 in that the suit is a civil action between citizens of one state and a foreign state and the matter in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to claims occurred in this District and TCW's principal office in Texas is located in Harris County, Texas.

## DECLARATORY JUDGMENT ACTION

5. In addition to seeking the recovery of damages for overpayments to TCW, this is an action for declaratory judgment pursuant to rule 57 of the federal rules of civil procedure and 28 U.S.C. § 2201 for the purpose of determining actual controversies between the parties, as described below.

6. Marathon requests a declaration from this Court that TCW has no rights to any proceeds from sales of downstream products from the Alba Field pursuant to the Alba PSC because (a) downstream products are not "minerals" contemplated by section 1.10 of the Override Agreement and the Production Sharing Contract between Walter International Equatorial Guinea and the Republic of Equatorial Guinea dated April 10, 1990 ("Alba PSC"); and (b) Texas law establishes

that TCW's economic interest to proceeds from the sale of condensate and gas is calculated at the well head, not at the tailgates of the LPG and methanol plants.

7. On February 1, 1993, Walter International Equatorial Guinea ("Walter") granted a Conveyance of Overriding Royalty and Agreement to TCW ("TCW Interest") in exchange for TCW advancing a loan of $4,600,000 in addition to certain obligations under the loan agreement. Through the conveyance, TCW received

> An interest in and to Assignor's Interest in the Alba Field under and pursuant to the Alba PSC, equal to FOUR PERCENT (4%) of all Gross Proceeds received by or for the account of Assignor relating to the sale or delivery of the Minerals produced from the Alba Field on or after Effective Date.
>
> An interest in and to Assignor's Interest in the Other PSC Properties under and pursuant to the Alba PSC, equal to ONE AND ONE-HALF PERCENT (1.5%) of all Gross Proceeds received by or for the account of Assignor relating to the Properties on or after the Effective Date

The Alba Field is located offshore in the territorial waters of the Republic of Equatorial Guinea ("EG") and contains both condensate and natural gas. The TCW Interest limits TCW's interest in the Alba Field under and pursuant to the Alba PSC and defines it as an economic interest rather than a real property interest. This interest is expressly limited to minerals extracted from certain defined geological formations in the Alba Field.

8. The TCW Interest defines "Alba Field" as "the Miocene Isongo sandstone reservoirs which correlate to the productive interval between 2,650 and 3,000 meters subsurface on the log of the Alba #2 well and/or found within the structural closure located in the area shown in Exhibit D to the Alba PSC." The TCW Interest further defines "Other PSC Properties" as "any and all lands,

3

horizons and reservoirs covered by, or from which Minerals can be produced pursuant to the Alba PSC except and excluding the Alba Field."

9. TCW was assigned an "economic interest," which was "equal to 4.00% of all Gross Proceeds received by or for the account of Assignor relating to the sale or delivery of Minerals <u>in the Alba Field</u>" and "1.5% of all Gross Proceeds received by or for the account of Assignor relating to the sale or delivery of Minerals <u>in Other PSC Properties</u>." In other words, the only interest assigned to TCW was an economic interest in the Alba PSC, limited to extraction, not downstream "processing" of minerals.

10. The only Equatorial Guinean interest Walter had to grant in 1993 was in the Alba PSC. The TCW Interest is derivative of those rights and only those rights acquired by Walter from EG under the Alba PSC. The Alba PSC was executed by Walter and EG on April 10, 1990 and is expressly governed by EG law. The Alba PSC was based on the contract form required by EG to govern the right of private companies like Walter to receive proceeds of production from the fields that continued to be owned by EG. The rights received by Walter under the Alba PSC are expressly limited to "Petroleum Operations" performed in the Alba Field and do not include subsequent handling, refining or treating of the minerals produced from the Alba Field.

11. The economic interests of Walter and TCW are further created, defined and controlled by E.G. Decree-Law No. 7/1981, dated June 16, 1981 relating to hydrocarbons ("Hydrocarbons Law") of EG. Article 1 of the Hydrocarbon Law states that hydrocarbons in EG's jurisdictional waters "are the property of the State of the Republic of Equatorial Guinea and assets of the public domain." Thus, hydrocarbons located in EG or its territorial waters cannot be owned by any party other than EG. Under Article 3, to explore and exploit the hydrocarbon resources, EG reserves the

right to carry out what are defined as "Petroleum Operations," either directly or through contractors, whose "activities shall be authorized and regulated through Contracts with the State." Article 4 requires approval of any such contracts by the Ministry of Industry, Mines and Energy and EG.

12. Article 6 defines the terms used in the Hydrocarbon Law and resulting exploration and development contracts. The term "Petroleum Operations" as used in the Alba PSC is defined in its entirety in the Hydrocarbon Law as follows:

> The operations related to hydrocarbon exploration, development, extraction, production, separation in the field, transportation, storage, sale, or making hydrocarbons available up to the point of exportation or entry into a refinery, Natural Gas liquefaction or treatment plant. **These operations shall not include** transportation outside the Republic of Equatorial Guinea, nor **any hydrocarbon refining or handling process that may occur in a refinery or in a Natural Gas liquefaction or treatment plant.**

Thus, permitted Petroleum Operations are limited to extraction and production of the crude oil or natural gas from the field— not any subsequent refining or treating of those hydrocarbons. EG regulates downstream operations separately from Petroleum Operations. Because downstream operations like the subsequently constructed liquified petroleum gas ("LPG") and methanol plants are not included in the legal definition of "Petroleum Operations", such activities are governed by other EG laws. EG required and obtained agreements separate and independent from the Alba PSC before permitting any downstream operations. Because Walter had no right to proceeds from downstream operations under the Alba PSC, TCW derivatively cannot have greater rights.

13. The extraction of gas from the Alba Field creates condensate, as well as natural gas, as it reaches the surface. Initially, condensate was the only product sold from the Alba Field. As

condensate production in the Alba Field increased natural gas production also increased. Because no market existed for the gas, it was flared.

14. In 1996 and 1998, EG authorized building LPG and Methanol Plants to create a market for the gas through separate individual agreements with other companies including Plaintiff. TCW has no interest in the proceeds from the downstream operations under the TCW Interest or the Alba PSC.

15. In May 2000, TCW performed an audit to determine whether the TCW Interest was being paid in accordance with the provisions of the TCW Interest and the Alba PSC. The TCW auditor asserted that CMS Energy ("CMS") had not been paying the royalty correctly by paying the royalty only on the gas and not on the products from the gas processing plant. In response, in September 2000 — contrary to the terms of the TCW Interest and EG Hydrocarbon Law— CMS began paying TCW an interest on the sales of propane, butane and condensate from the LPG plant and continued paying TCW on the gas sales to the Methanol Plant. In January 2002, Marathon purchased the assets of CMS in EG and continued to pay the TCW Interest as CMS had paid it. This has resulted in TCW being unjustly enriched by payments of an overriding royalty to which it is not legally entitled.

## GROUNDS FOR DECLARATORY RELIEF

16. TCW cannot expand the economic interest it received beyond the terms of the written contracts. TCW's attempt to expand its economic interest to include a sharing percentage of the production from the methanol and LPG plants is contrary to the unambiguous terms of the written contracts. Through the TCW Interest, TCW received an economic interest in "the Alba Field under and pursuant to the Alba PSC equal to FOUR PERCENT (4%) of all Gross Proceeds" and an

economic interest in "'Other PSC Properties' under and pursuant to the Alba PSC equal to ONE AND ONE-HALF PERCENT (1.5%) of all Gross Proceeds." The definitions of the terms "Assignor's Interest" and "Gross Proceeds" contained in the TCW Interest and relevant controlling Texas law negate TCW's claim that it is entitled to a share of the proceeds from the sale of condensate, methanol and LPGs.

17. Under the TCW Interest, "Assignor's Interest" means the interests of Assignor in the Alba Field and Other PSC Properties pursuant to the Alba PSC. Therefore, all of TCW's interests are subject to the Alba PSC which is in turn governed by EG law. TCW is entitled to all Gross Proceeds received by or for the account of Assignor relating to the sale or delivery of the Minerals produced from the Alba Field. "Minerals" pursuant to the TCW Interest are liquids and gas, as defined herein, and any and all minerals produced from or attributable to the PSC properties under or pursuant to the Alba PSC. Therefore, TCW is not entitled to any royalty based on the sale of LPG, methanol or condensate processed or manufactured by these plants outside the PSC.

18. EG Hydrocarbon Law makes this point abundantly clear by defining not only what is included in Petroleum Operations, but also what is not included. Petroleum Operations "[do] not include transportation outside the Republic of Equatorial Guinea, nor **any hydrocarbon refining or handling process** that may occur in a **refinery or in a Natural Gas liquefaction or treatment plant**." In other words, the term "Petroleum Operations" excludes downstream processing of gas production. Handling, refining, treating, or processing the natural gas at the Methanol or LPG plants is not a Petroleum Operation and is not addressed in or covered by the Alba PSC. Because TCW only received an interest in what was assigned to the Plan from the Alba PSC, TCW has no right to any proceeds generated by non-Petroleum Operations.

19. The TCW Interest's definition of TCW's interest confirms that TCW is not entitled to an interest calculated from the proceeds from sales of downstream products, even including condensate recovered in the treatment process. TCW's Interest is "intended to be an economic interest in property." TCW is entitled to receive 4% of all Gross Proceeds received by or for the account of Assignor relating to the sale or delivery of minerals produced from the Alba Field. "Production" under Texas law is defined as the actual physical extraction of the mineral from the land. Proceeds of minerals produced does not include proceeds from the processing of that gas by downstream plants. By its terms, the TCW Interest is limited to proceeds of production from the reservoir when it is produced of the Alba Field and is sold — not on the products manufactured or recovered in downstream operations. Therefore, TCW's economic interest under the contracts must be calculated based on the proceeds from the sale of condensate and gas at the wellhead.

20. Pursuant to rule 57 of the federal rules of civil procedure and 28 U.S.C. § 2201, Marathon requests that the Court enter a declaratory judgment that TCW does not have any interest in the proceeds from the sales of downstream products produced from the Alba Field.

## UNJUST ENRICHMENT

21. Based on the terms of the TCW Interest, TCW is not entitled to any interest in proceeds from the sales of downstream products. TCW has been unjustly enriched by accepting proceeds from the sales of condensate, propane and butane from the LPG Plant which is not governed by the Alba PSC. TCW's acceptance of such payments is against the fundamental principles of justice, equity and good conscience.

22.  As a result of such enrichment, Marathon asks for past damages equal to the value paid by Plaintiff on proceeds from the sales of condensate, propane and butane less the amounts paid by Plaintiff for proceeds on the sales of gas from the PSC to the Alba Plant.

23.  Plaintiff, Marathon EG LPG LDC respectfully requests that Defendant be cited to appear and answer herein, that the Court enter a declaratory judgment determining that Defendant has no rights to the proceeds from sales of downstream products, that Plaintiff recover actual damages together with prejudgment and postjudgment interest and that Plaintiff recover such other and further relief which the Court deems just and proper.

Respectfully submitted,

By: _____
James Eloi Doyle
State Bar No. 06093500
So. District Bar No. 4848

**DOYLE, RESTREPO, HARVIN & ROBBINS, L.L.P.**
600 Travis Street, Suite 4700
Houston, Texas 77002
(713) 228-5100 (telephone)
(713) 228-6138 (facsimile)

**ATTORNEY-IN-CHARGE FOR PLAINTIFFS**

**OF COUNSEL:**
Margaret C. Cox
State Bar No. 24012464
So. District Bar No. 24219
**DOYLE, RESTREPO, HARVIN & ROBBINS, L.L.P.**
600 Travis Street, Suite 4700
Houston, Texas 77002
(713) 228-5100 (telephone)
(713) 228-6138 (facsimile)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Marathon E.G. LPG LDC

## DEFENDANTS
Trust Company of the West

**H-04-4438**

(b) County of Residence of First Listed Plaintiff: Cayman Islands
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed: Los Angeles County, California
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
James Eloi Doyle
Doyle, Restrepo, Harvin & Robbins, L.L.P
600 Travis, Suite 4700
Houston, Texas 77002   (713) 228-5100

Attorneys (If Known)

United States Courts
Southern District of Texas
**FILED**
NOV 19 2004
Michael N. Milby, Clerk of Court

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [x] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [x] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [x] 190 Other Contract
- [ ] 195 Contract Product Liability

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**
PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury

PERSONAL INJURY
- [ ] 362 Personal Injury— Med. Malpractice
- [ ] 365 Personal Injury — Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 444 Welfare
- [ ] 440 Other Civil Rights

**PRISONER PETITIONS**
- [ ] 510 Motions to Vacate Sentence
Habeas Corpus:
- [ ] 530 General
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

**FORFEITURE/PENALTY**
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC
- [ ] 630 Liquor Laws
- [ ] 640 R.R. & Truck
- [ ] 650 Airline Regs.
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 730 Labor/Mgmt.Reporting & Disclosure Act
- [ ] 740 Railway Labor Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 895 Freedom of Information Act
- [ ] 900 Appeal of Fee Determination Under Equal Access to Justice
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

§§ 1332; 2201 Declaratory Judgment Action

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes  [x] No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE 11/19/04
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY